IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 16-cv-02874-RPM

MIKULAS INVESTMENTS LLC.,

    Plaintiff,

v.

COLONIAL MANAGEMENT GROUP LP,

    Defendant.

_____

ORDER GRANTING SUMMARY JUDGMENT
_____

The plaintiff Mikulas Investments, LLC, (Landlord) owns a commercial building in Monument, Colorado, which it leased to defendant, Colonial Management Group L.P. (Tenant) on January 27, 2015. In this civil action brought pursuant to 28 U.S.C. § 1332, Landlord claims that Tenant breached the lease by failing to restore the property to the same condition and layout as existed when it was given possession.

The relevant provisions of the lease are these:

6.02 <u>Proper Zoning</u>: LANDLORD warrants and represents, to the best of its knowledge and belief, that no zoning or other restriction exists preventing or restricting use of the Premises for Tenant's Use. TENANT hereby confirms that they have obtained from the Town of Monument in El Paso County a letter indicating that the Premises is properly zoned for Tenant's Use ("Tenant's Zoning Letter") and shall furnish such letter to LANDLORD, but TENANT reserves all rights to terminate pursuant to Article 25.

    * * *

ARTICLE 10 – FIXTURES

    * * *

10.02  Removal of TENANT's Property. Upon expiration of this Lease, or any earlier termination hereof, TENANT, at its expense, shall remove from the Premises all of TENANT'S Property, and TENANT shall repair any damage to the Premises resulting from any installation and/or removal of TENANT'S Property, **and shall restore the Premises to the same physical condition and layout as they existed at the time TENANT was given possession of the Premises, reasonable wear and tear excepted**. TENANT shall have five (5) days after the expiration or termination of the Lease to complete such tasks with a license to enter the Premises. Any other items of TENANT'S Property which shall remain in the Premises, or after such period of five (5) days, may, at the option of LANDLORD, be deemed to have been abandoned, and in such case, such items may be retained by LANDLORD.

* * *

ARTICLE 25 – OPTION TO TERMINATE

25.01  Contingent on Licenses and Permits. In the event that: (i) TENANT is unable to maintain in full force and effect any and all necessary local, County, State and federal permits licenses and approvals for the operation of TENANT's Use during the Term or any Option Term, or (ii) Tenant fails to receive TENANT's Zoning Letter after TENANT may request same, then TENANT shall have the right, at TENANT's option, upon notifying the LANDLORD in writing to terminate the Lease as set forth in Article 25.02. TENANT will use its best efforts to keep all licenses, permits and approvals as described in Article 25.02.

25.02 Termination of Licenses or Permits Lost. The LANDLORD and the TENANT agree that the continuing obligations of the TENANT to be bound by the terms of this Lease is expressly contingent upon the TENANT maintaining in full force and effect any and all necessary local, County, State and federal approvals, licenses and permits for the operation of TENANT's Use during the entire term of the Lease and any renewals term. In the event that (i) the TENANT shall lose any such approvals, licenses and/or permits, for any reason whatsoever; or (ii) any event described in Article 25.0l may occur, then the TENANT shall notify the LANDLORD and the lease agreement shall terminate within 120 days of the date of notification. The TENANT shall be responsible for all lease payments and expenses during the 120 day period. **At the end of this period, the Lease agreement shall become null and void and all obligations of TENANT under the Lease shall be terminated**.
Lease Agreement (Doc. 24-3) (bold added).

The defendant has moved for summary judgment of dismissal.

The following statement of facts is not disputed.

Landlord acquired the subject property in 1998. Until 2014 it was used primarily by a pediatric clinic or medical group.

Tenant operates outpatient substance abuse clinics in nineteen states. In 2014 the State of Colorado requested Tenant to consider locating a treatment clinic in the Monument area. Tenant identified the property as a potential location and began negotiations with Landlord. On October 2, 2014, the Town of Monument issued to Tenant a Zoning Use Conformation providing that the planned clinic was an approved use in the Town's business district.

Tenant invested in modifications of the building to make it suitable for its purposes, including installation of a security system, new doors and windows, plumbing, HVAC, electrical and "other finishes."

After these improvements had been made, but before the clinic opened, public opposition to the clinic was mobilized by citizens of Monument. On June 25, 2015, an appeal of the previously granted zoning approval was filed with the Town's Board of Adjustment. After a public hearing on August 10, 2015, the Town revoked its approval to operate a clinic at the property.

As a result, Tenant was unable to open or operate its planned clinic. On April 29, 2016, Tenant gave notice to Landlord of its intent to terminate the Lease pursuant to Article 25. Tenant never occupied the property and the improvements it made were new and unused. Landlord filed suit October 28, 2016.

The plaintiff has asserted these additional statements of fact:

1. Tenant sued the Town of Monument for wrongfully determining its operations were a "clinic" within the meaning of applicable zoning provisions, thereby changing the zoning approval. Tenant was paid the total sum of $900,000.00 to settle its claims against the Town.

2. Many of the Tenant's modifications made to the premises involved the removal of existing plumbing and cabinetry and the installation of a large safe which was subsequently removed. The only significant tenant improvements made by Tenant were the upgraded security system from the existing security system and the installation of a faster Internet. Tenant did not do any exterior window replacement—only interior.

3. Despite active efforts to either lease or sell the property after Tenant vacated the premises, Plaintiff has been unable to locate anyone who was even willing to enter into preliminary negotiations to buy or lease the property. Therefore, there are no fixed ascertainable square foot rental rates, only rates that are being "asked".

4. Landlord has obtained two estimates from contractors in June and July 2016 for restoring the premises to pre-lease condition, $150,612 and $109,251. Landlord also obtained a subsequent estimate (the Bryan estimate) that included four different estimates based on different scope-of-work scenarios.

5. Landlord unsuccessfully attempted to rent the property "as is" for approximately 8 months at a loss of approximately $6,500 per month.

6. After over eight months of unsuccessfully attempting to sell or rent the premises "as is", based upon comments received from another broker looking at the property, Landlord determined the property would be more marketable if certain

demolition occurred to open up certain areas. That demolition took place in May of 2017 at a cost of approximately $4,500.00.

7. Landlord is unable to determine the precise amount of its damages until a tenant is located, in order to determine what changes to the improvements are needed.

The defendant's motion for summary judgment raises two issues:

1. Was Tenant's contractual obligation to restore the property to its pre-Lease condition upon termination of the Lease extinguished by termination of the Lease?

2. Assuming Tenant had an obligation to restore the property, is Landlord's claim barred because landlord has suffered no damages and restoration would constitute economic waste?

Tenant argues that the plain terms of the Lease gave it the right to terminate upon loss of zoning approval from the Town of Monument, and that termination of the Lease also terminated Tenant's obligation to restore the premises upon termination. The argument is simple:

- Lease § 10.02 provides that on expiration "or any earlier termination" of the Lease, Tenant "shall restore the Premises to the same physical condition and layout" as they existed when tenant took possession, reasonable wear and tear excepted.

- Lease § 25.02 provides that Tenant's obligation to be bound by the terms of the Lease is "expressly contingent" on Tenant being able to maintain "any and all necessary local, County, State and federal approvals, licenses and permits" during the entire Lease term.

- Lease §§ 25.01 and 25.02 give Tenant the right to terminate the Lease upon notifying Landlord, in the event Tenant is unable to maintain any such approvals, licenses, or permits.
- Lease § 25.02 provides that upon such an event occurring, and Tenant notifying Landlord, "the Lease shall terminate within 120 days of the date of notification."
- Lease § 25.02 also provides that at the end of the 120 day period, "the Lease agreement shall become null and void and all obligations of Tenant under the lease shall be terminated."
- The undisputed facts show that Tenant lost its zoning approval from the Town of Monument and gave notice of termination on April 29, 2015, resulting in termination of the Lease, rendering the Lease "null and void" and terminating Tenant's obligation to restore the premises, on August 27, 2015.

Landlord responds that Lease § 25.02 provides that Tenant shall "be responsible for all lease payments and other expenses during the 120 day period" after notice of termination is given to Landlord. Landlord argues that expenses to restore the property to its pre-lease condition should reasonably be considered to be "other expenses" in this provision, and that it is at least a jury question as to what is included in "expenses."

Tenant replies that plain language of the Lease contradicts Landlord's argument that restoration of the property is among the "expenses" Tenant was required to pay during the 120-day notice period. Lease § 25.02 makes Tenant responsible for "lease payments and expenses during the 120 day period." Tenant paid all such expenses

even though it never occupied the premises. Restoration, however, could not have been such an expense because the obligation to restore did not accrue until **after** the 120-day period had run and the Lease was terminated. Lease § 10.02 makes that clear, giving Tenant "five (5) days after the expiration or termination of the Lease to complete such tasks [i.e., remove personalty, make repairs, or restore the premises]…." The obligation to restore never arose because, under § 25.02, at the end of the 120-day notice period the Lease became null and void.

The plain language of § 25.02, rendering the lease "null and void" upon termination for loss of a required permit, and stating that "all obligations of Tenant under the Lease shall be terminated" in that event, is not ambiguous. "All obligations," taken at face value, must include the obligation to restore the premises even though that obligation does not even arise until the termination that simultaneously extinguishes it.

"When a contract is unambiguous, the court must, in the absence of a showing that the contract is voidable on grounds such as mistake, fraud, duress, undue influence, or the like, **or unless the result would be an absurdity**, give effect to the contract as written." *Lake Durango Water Co. v. Pub. Utilities Comm'n of State of Colorado*, 67 P.3d 12, 20 (Colo. 2003) (emphasis added) (citing R. Lord, Williston on Contracts, Interpretation and Construction § 30:6 (4th ed.1999)). There is no absurdity here.

Section 10.02 imposes the duty to restore upon "expiration of this Lease, or any earlier termination…." Section 25.02 does not eliminate that duty upon **any** termination, but only upon a termination for loss of a necessary permit or approval. A reasonable construction is to read § 25.02 as a specific and limited exception to the duty to restore

7

that is otherwise imposed by § 10.02. That reading gives meaning to both provisions, enforcing the plain language of § 25.02 while still accounting for both Landlord's interest in imposing the duty to restore and the Tenant's need to condition its duties under the Lease on maintaining necessary permits and approvals. The parties agreed by these terms to share the risk that Monument would change its position.

**Issue Two: Assuming Tenant had an obligation to restore the property, is Landlord's claim barred because landlord has suffered no damages and restoration would constitute economic waste?**

It is not necessary to answer this question because of the Court's answer to the first question. In the interest of completeness the question is addressed.

The lease provides for the application of Colorado law. In *La Casa Nino, Inc. v. Plaza Estaban*, 762 P.2d 669 (Colo. 1988), the court recognized that contract principles require a measure of damages that returns the lessor to the position it would have occupied absent a breach, but avoids economic waste and/or providing the landlord a windfall. *Id.* at 672-73.

Landlord then asserts that the Court should "presume" applicability of the ordinary rule—costs of restoration—unless Tenant makes a showing of economic waste, which Landlord argues is for the jury to determine.

Landlord has obtained two estimates of the costs of demolition and restoration. Mr. Mikulas' deposition testimony that he did not know exactly what Landlord's damages are reflects the fact that he cannot know exactly what restoration may cost until a new tenant is found and the exact improvements needed can be determined. Landlord argues it has been attempting to "walk a tightrope" by marketing the property

"as is," in order to avoid Tenant arguing that full demolition was unnecessary and wasteful, but has been unsuccessful.

Landlord states that it has not produced any diminution of value evidence because it does not believe that is the applicable measure of damages. Without elaborating on exactly how the case would be presented, Landlord simply states that it "should be for a jury to determine whether the property is more or less rentable in its present condition."

In *Campbell v. Koin*, 391 P.2d 365, 367 (Colo. 1964) the court in a breach of construction contract case stated that the ordinary rule is the cost of putting the work in the condition called for by the contract except in cases where that rule would involve "unreasonable economic waste." *See also Gold Rush Invs., Inc. v. G.E. Johnson Constr. Co., Inc.*, 807 P.2d 1169, 1174-75 (Colo. App. 1990) (applying same rule and elaborating that unreasonable economic waste from completion of construction could occur by "destruction of usable property or otherwise").

Tenant argues that Mikulas' testimony that he cannot know the exact amount of damages is irrelevant to the summary judgment issues. Mikulas does not need to know what a tenant will ultimately want because the Lease did not require Tenant to put the property in a condition suitable for a new tenant, but rather simply to restore the property to its previous condition.

The burden is on a plaintiff alleging breach of contract to prove the **fact** of damage "with reasonable certainty," which is interpreted as "by a preponderance of the evidence." *Tull v. Gundersons, Inc.*, 709 P.2d 940, 943 (Colo. 1985). The **amount** of damages need not be established with mathematical certainty, but a plaintiff still must

9

provide a "reasonable basis for computation … that will enable the trier of the facts to arrive at a fairly approximate estimate of the loss." *Id.* (quoting *A to Z Rental, Inc. v. Wilson,* 413 F.2d 899, 908 (10th Cir.1969)).

Setting aside issues of lack of authentication, hearsay, etc., Landlord has at least arguably submitted evidence that restoration of the premises to their pre-Lease condition and layout would cost between $109,000 and $150,000, based on the two estimates attached to the Response at Exhibits 5 and 6.

However, the law fairly clearly supports Tenant's argument that cost-of-restoration damages should not be recoverable if they would result in "economic waste" through the destruction of usable property or otherwise. *See Campbell*, 391 P.2d at 367; *Gold Rush*, 807 P.2d at 1174-75.[1] And it is undisputed that Tenant added valuable improvements to the property that would be destroyed if literal restoration occurred. As a result, the alternative measure of damages—diminution of value—would be appropriate in this case. But Landlord has submitted **no** evidence of that, and denies any obligation to do so. There is no evidence of either the fact of damage or a reasonable approximation of the amount.

Landlord's affidavit and deposition testimony (and even Response brief) assert that Landlord cannot know how much the cost of restoration may be because Landlord needs to know what the next tenant may want, in order to determine what demolition and renovation may actually need to be done. This is an implicit admission that the

---

[1] While these were construction contract cases, the principles seem equally applicable to the issue here, and lease restoration cases from other jurisdictions support the same conclusion.

plaintiff is not actually seeking true costs of restoring the premises to their pre-Lease condition.

Upon the foregoing, it is

ORDERED that the defendant's motion for summary judgment is granted and the Clerk shall enter judgment for the defendant, dismissing the plaintiff's claims and this civil action with an award of costs to the defendant.

DATED: August 28, 2017

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge